**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**KRISTOPHER NELSON,**<br><br>**Defendant.** | **Crim. Case No. 25-CR-380** |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

Defendant Kristopher Nelson was proactive in his attempts to commit fraud. On April 15 and October 1 of last year, Nelson was found in possession of five different identification cards sporting information different than his own, as well as two devices capable of making credit cards, and three blank proximity "prox" cards. The defendant admitted to using the fake IDs to open bank accounts so he could deposit checks he received from an associate, and to attempting to make fake credit cards using the device readers. Although no financial loss was determined in this case, the persistent attempts by the defendant to conduct fraudulent transactions are concerning. The U.S. Sentencing Guidelines recommend a sentence of 0 to 6 months based on Nelson's criminal conduct and lack of criminal history points. Given the potential commission of at least six felonies stemming from the defendant's conduct, the government respectfully requests that the Court sentence Nelson to a middle of the guidelines sentence of three months' imprisonment, followed by three years of supervised release. Such a sentence would be sufficient but not greater than necessary to accomplish the purposes of sentencing.

## I.      Background

This case began on April 15, 2025, when the defendant was pulled over and arrested in Washington, D.C. for driving a car that had been reported stolen. Nelson's unauthorized use of a

vehicle was not papered, however, a search incident to that arrest uncovered that Nelson was in possession of the following identification cards, each of which had Nelson's picture, but contained information that was different than Nelson's true information:

**Counterfeit Passport Card**



**Counterfeit Texas Driver's License**



**Counterfeit North Carolina Driver's License**



**Counterfeit Florida Driver's License**



Nelson was also found to be in possession of a Social Security card in the name of "Willie Snowden" that bore a Social Security number ending in 83. A search of law enforcement databases revealed that the SSN printed on this card was issued to a different person who was not "Willie Snowden" or Nelson. Notably, the redacted driver's license and passport numbers on the above documents also corresponded to real people, but the rest of the information was false. A voluntary custodial interview of Nelson took place following the April 15 arrest, where Nelson admitted to police officers, "I was trying some stuff as a kid. I used those maybe like three or

four years ago.  I know for sure they do not work right now if you try anything with them . . . I just kept them in that bag."

A criminal complaint and arrest warrant were later issued for five violations of Title 18 U.S.C. §§ 1028(a)(6), with the execution of the warrant taking place on October 1, 2025.  During the arrest, Nelson consented to the search of his bedroom and to another custodial interview. The search of Nelson's bedroom uncovered the two card reader devices and three prox cards that are the subject of this conviction. When Nelson was questioned about his use of the fake IDs and device-making equipment, Nelson relayed to officers that he purchased the IDs online, and that another unknown individual directed Nelson to open bank accounts with the fake IDs and to deposit checks into the accounts. In return, Nelson received a small percentage of the money deposited (approximately $2,000 according to him). When questioned about the prox cards and two card readers, Nelson also stated that he purchased these on the internet, and that he tried to make credit cards, but that they never worked.

## II.    Sentencing Guidelines

The base offense level for 18 USC § 1029(a)(4) is six pursuant to USSG §2B1.1(a)(2). PSR ¶ 18. Because the offense involved the possession or use of device-making equipment, specifically, the two card readers found in Nelson's bedroom,  two levels are added; however, because the resulting offense level is less than 12, the offense level is increased to 12 under USSG §2B1.1(b)(11)(A)(i).  PSR ¶ 19. By pleading guilty in a timely manner, two levels are subtracted pursuant to USSG §3E1.1, resulting in a total offense level of 10.  PSR ¶ 24. Despite numerous traffic-related arrests, Nelson also meets the criteria for a zero-point offender adjustment, which subtracts an additional two levels pursuant to USSG §4C1.1. bringing the total offense level to 8,

4

with a criminal history category of I.  PSR ¶ 25-26. The recommended guidelines range at this level is 0 to 6 months. PSR ¶ 4.  The recommended fine range is $2,000 to $20,000. PSR ¶ 99.

### III.    The 18 U.S.C. § 3553(a) Factors

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims. 18 U.S.C. § 3553(a)(1)-(7).

### A.    The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

The defendant's conduct in this case does not represent a single mistake or lapse of judgment.  The defendant made numerous attempts to use stolen information from people, and he purchased equipment to further expand his enterprise into credit card fraud.  In total, he possessed five counterfeit identification cards, four of which contained an actual person's true identification numbers.  Not only does this constitute five violations of 18 USC § 1028(a)(6) (fraud in connection with identification documents), the defendant may have also committed aggravated identity theft under 18 USC § 1028A, which carries a *two year mandatory minimum* sentence.  The defendant admitted he used these IDs to open bank accounts to facilitate fraudulent bank transactions, potentially committing more felonies in the process.  On top of this, he took the time to seek out

5

and purchase the two card reader access devices and three prox cards, which he used in an attempt to make counterfeit credit cards.

The defendant took several affirmative steps to commit fraud, and using stolen information from four people and making fake credit cards has the potential to cause widespread financial damage and loss. To truly reflect the nature, circumstances, and seriousness of the offense, three months of imprisonment is justified.

### B.    The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct

Possessing and using identification information of other people is a serious crime, as evidenced by the two-year minimum sentence that goes with aggravated identity theft. These crimes affect millions of people each year. In 2021, about 23.9 million U.S. residents age 16 or older (9% of the population) had experienced identity theft in the past 12 months, and as of 2021, about 1 in 5 persons (22%) had experienced identity theft in their lifetime.[1] The statistics on credit card fraud are even greater. In 2024, approximately 62 million people were victimized by credit card fraud.[2] Of the 739 credit card fraud or other instrument fraud cases reported to the U.S. Sentencing Commission in 2024, the medium loss was $154,919.[3] The government is hopeful that Nelson will not engage in future criminal behavior notwithstanding his numerous attempts to commit identity and financial fraud. Even if Nelson has been deterred personally, however, would-be criminals who weigh whether to possess and use stolen information from others, or to purchase device-making equipment themselves should have to think twice that if they are caught, they will

---

[1] https://bjs.ojp.gov/press-release/victims-identity-theft-2021#:~:text=In%202021%2C%201%20in%2010,direct%20financial%20losses%20of%20$880.
[2] https://www.security.org/digital-safety/credit-card-fraud-report/#:~:text=134%20million%20Americans%20have%20been,comingling%20of%20disparate%20card%20uses).
[3] https://www.ussc.gov/research/quick-facts/credit-card-and-other-financial-instrument-fraud.

6

go to jail.  Three months of incarceration would hopefully help convey that message.

### C.    The History and Circumstances of the Defendant

This is not the defendant's first arrest, or even first sentencing. The defendant has been arrested now seven times, six of which were in the last three years.  Although most of these offenses are traffic-related, it should be noted that one of the arrests in 2023 involved two counts of felony credit card fraud that were n*olle prossed*.  PSR ¶ 28-35. Two of the above-listed arrests also occurred after the defendant pleaded guilty in this case.  *Id*.  The defendant then failed to appear at a hearing on March 19, 2026, for his last arrest and a bench warrant was issued. Despite the second chance given to the defendant, he was undeterred.  All of the above reflects a blatant disregard for the law.

To his credit, in the two arrests that originated this case, Nelson was cooperative with law enforcement and promptly came clean and accepted responsibility for his actions—saving the government substantial time and resources in further pursuing a lengthier investigation. The government also takes note of Nelson's reported desire to seek mental health treatment, and that he appears to be the primary caretaker of his six-year-old son, who lives with Nelson and Nelson's mother.  For these reasons, the government's sentencing recommendation is at the mid-point of the guidelines.

### D.    Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two

defendants quite differently, there is no more reason to think that the first one was right than the second."). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." Id. at 533.

A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013).d

According to the U.S. Sentencing Commission's Judiciary Sentencing Information, "[d]uring the last five fiscal years (FY2020-2024), there were 929 defendants whose primary guideline was §2B 1.1, with a Final Offense Level of 8 and a Criminal History Category of I, after excluding defendants who received a § 5K 1.1 substantial assistance departure." PSR § 105. About 17% of those defendants (156) received a sentence of imprisonment, with three months being the average length imposed. *Id*.

Here, three months of imprisonment is warranted given the number of the defendant's proactive steps to use stolen identification information and create counterfeit credit cards, which could have constituted multiple felonies, including aggravated identity theft that would have resulted in two years of imprisonment. The defendant's early and uncontroverted acceptance of responsibility in this case leads the government to recommend a middle of the guideline sentence of three months imprisonment, which also happens to be the average length of time for those

incarcerated for this offense.

Accordingly, the government's recommended sentence of three months' imprisonment would not lead to an unwarranted sentencing disparity with other defendants in his category.

## **CONCLUSION**

The government requests that the Court sentence the defendant to three months of imprisonment to be followed by three years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

/s/ *Jason Facci*
JASON FACCI
D.C. Bar No. 1027158
Assistant United States Attorney
Fraud, Public Corruption & Civils Rights Section
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7742 | Jason.Facci@usdoj.gov